IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDMOUND CALLOWAY,
    Plaintiff,
v.
DENNY DiPAOLA, KEN PLUMMER,
and GREG HEIDLER,
    Defendants

Case No. 3:08-cv-257-KRG-KAP

## Report and Recommendation

Recommendation

Plaintiff Calloway, currently at S.C.I. Somerset, filed a complaint, docket no. 3, subsequently amended, docket no. 11, alleging claims under 42 U.S.C.§ 1983 against defendants DiPaola, Heidler, and Plummer, three employees of the Pennsylvania Department of Corrections who work in the laundry department at S.C.I. Somerset[1]. The parties have filed cross motions for summary judgment, docket no. 50 (plaintiff); docket no. 53 (defendants). I recommend that defendants' motion be granted in part and plaintiff's motion be denied.

Report

The Federal Rules of Civil Procedure allow a party to obtain summary judgment upon a showing that there are no genuine issues of material fact and that it is entitled to judgment as a

---

1. Calloway also cited Title VII of the Civil Rights Act of 1964, but that statute is inapplicable to prison corrections programs even if those programs perform tasks analogous to work that outside of prison would be covered by Title VII. That for ease of administration both state and federal prisons use money as a reward for encouraging inmates to assume some of the burden for caring for themselves does not transform internal prison housekeeping jobs into covered labor.

matter of law. Fed.R.Civ.P. 56(a). Summary judgment has long been "regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules... ." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury properly applying the relevant law might return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Under Fed.R.Civ.P. 56(c)(1)(A) and (B), once a party moving for summary judgment cites to the record and identifies evidence (or points out the absence of evidence in the record) which demonstrates that a fact is not genuinely disputed, the responding party must go beyond the pleadings by way of admissible evidence contained in affidavits, depositions, answers to interrogatories, etc., to demonstrate specific facts which give rise to a genuine issue as to the elements essential to its case which it bears the burden of proving at trial. See Celotex Corp., 477 U.S. at 323-24.

Every Section 1983 claim has two basic elements: 1) that defendant acted under color of state law, and 2) that defendant violated some federal constitutional or statutory right of the plaintiff. Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 155-56 (1978). The defendants do not dispute that they act or acted under color of state law, but deny they violated any right of Calloway's. Calloway claims 1) DiPaola violated the Equal Protection Clause by

2

failing to hire Calloway back to his previous job duties in the Corrections Industries laundry after Calloway served a disciplinary sanction in the RHU. Calloway is black, and DiPaola allegedly discriminated against him because he was black by not hiring him due to his suspension after he hired three similarly-situated white inmates back to their former job duties; 2) DiPaola, Heidler, and Plummer violated the First Amendment by filing a false misconduct against Calloway in retaliation for Calloway filing grievance No. 178772 against DiPaola; 3) DiPaola, Heidler, and Plummer violated the First Amendment by removing Calloway from his a prison job in retaliation for Calloway filing grievance No. 178772; and 4) DiPaola, Heidler, and Plummer violated the First Amendment by damaging or losing various laundry items in retaliation for Calloway filing grievance No. 178772.

The Equal Protection Clause of the Fourteenth Amendment prohibits government actors from intentionally treating similarly situated individuals differently on the basis of some invidious distinction such as race, but it does not provide a remedy where there are simply actions which happen to have a disproportionate impact which can be correlated to race. *Village of Arlington Heights v. Metropolitan Housing Development Center Corp.*, 429 U.S. 252, 265 (1977). *Village of Arlington Heights* gives a classic example of the distinction: adopting a zoning ordinance does not violate the Equal Protection Clause merely because it imposes a

burden on some prospective residents who happened to belong to an identifiable racial group, even though adopting the same ordinance for the purpose of burdening those same prospective residents because of their race would violate the Clause. Calloway claims that DiPaola intentionally treated him differently by not hiring him, a black inmate, on the basis that he had been in the RHU, while hiring white inmates in the same circumstances. DiPaola denies discriminating, but his defense is even more simple than that: DiPaola denies hiring any of the white inmates Calloway says he hired. The exhibits submitted by the parties (both parties present some of the same exhibits, and unless otherwise specified I am referring to the exhibits attached to Defendants' brief, docket no. 54) show that on January 1, 2007, DiPaola became the foreman of the second shift (1:30-9:30p.m) on the "soiled side" of the CI laundry. Exhibit 1, Declaration of Dennis DiPaola. Before that DiPaola was assigned to the first shift (6:15a.m-2:15p.m.). Calloway asserts that DiPaola "hired back" white inmates Tony Yohe, Dennis Hess and Richard Donofrio at their former jobs in the laundry after stints in the RHU that ended in 2006. Exhibit 4 (Official Inmate Grievance, Initial Review Response). Exhibit 2 (Official Inmate Grievance No. 178772). However, both Calloway's and DiPaola's exhibits show that these three inmates worked on the second shift in 2006, and the two who submitted affidavits do not know who hired them. Exhibit 5 (Yohe Affidavit/Declaration);

4

Exhibit 6 (Hess Affidavit/Declaration). In 2006 DiPaola was not the second shift foreman and could not have hired them. Calloway cannot establish a *prima facie* case of discrimination against DiPaola in the absence of evidence that DiPaola treated anyone differently[2]. Calloway argues that DiPaola had a duty to correct the discrimination that existed when he came on board as supervisor, but that assumes the conclusion that there was an Equal Protection violation for DiPaola to correct. It is not sufficient to select some criterion in which a plaintiff differs from other members in a diverse population and assert that this criterion is the cause of any difference in treatment. If Calloway produced evidence that DiPaola hired white inmates in violation of the policy allegedly applied to him he might have a claim of racial discrimination. But DiPaola's inheriting three white employees (out of how many in the applicant pool is not clear) is not evidence of racial discrimination, any more than DiPaola's having three Protestant employees is evidence of religious discrimination, or three employees under (or over) 40 is evidence of age discrimination.

---

2. In the absence of information about the racial composition of the inmate population at Somerset, applicants for various laundry jobs, and the process used to select inmates for jobs, the sole fact advanced by Calloway - that someone hired three inmates of the same race before he was not hired - does not in the least allow an inference of discrimination against Calloway on the basis of race.

5

Defendants contend they are entitled to summary judgment on Calloway's claims that he was barred from prison work in retaliation for filing Grievance No. 178772, because Calloway never exhausted the administrative grievance process as to that claim. The Civil Rights of Institutionalized Persons Act, as amended by the of the Prison Litigation Reform Act, provides:

No action shall be brought with respect to prison conditions under [42 U.S.C.§ 1983] or any other Federal Law, by a prisoner…until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a) . This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. Porter v. Nussle, 534 U.S. 516, 516 (2002)(excessive force is a "prison condition" to which the exhaustion requirement applies). Exhaustion before filing a complaint is required, Booth v. Churner, 532 U.S. 731, 739 (2001); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir.2003), and failure to follow the rules of the Pennsylvania Department of Corrections' administrative remedy procedure — the three step procedure set out at DC-ADM 804 — constitutes a procedural default of a claim. Spruill v. Gillis, 372 F.3d 218, 228-34 (3d Cir.2004)(Inmate defaulted claim by failing to name employee in grievance, but default was excused by grievance officer's recognition of employee from inmate's description). Defendants aver without contradiction that Calloway never filed a grievance about being "laid in from work" in or after April 2007 by the defendants. Exhibit 7,

Declaration of DOC Grievance Officer Tracy Williams. Defendants are entitled to summary judgment on this claim.

DiPaola concedes that Calloway's allegations adequately state a claim against him for filing a misconduct on or about March 30, 2007, in retaliation for Calloway's filing of Grievance No. 178772 in the previous month, but DiPaola denies that he barred Calloway from any job in retaliation for filing a grievance. The other two defendants move for summary judgment on both claims on the grounds that they had nothing to do with the issuance of the misconduct or the removal of Calloway from a prison job[3]. The law is settled that to be liable a defendant must have been personally involved or have actual knowledge of and acquiesced in the commission of a wrongful act. Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005). Calloway contends in his response to defendants' motion for summary judgment, docket no. 59 at 3, that his rights were violated "by management, which includes Defendant Dipaola." But management collectively is not liable for civil rights violations: an individual or some individuals must be. Specifically, to impose liability on DiPaola there must be evidence

---

3. Heidler and Plummer also defend on the basis of lack of exhaustion because Calloway did not name them in the ggrievance process. Calloway notes that Heidler's "name is located on the bottom pages of plaintiff's discrimination grievance." docket no. 59 at 5. Looking at Grievance No. 178772, which begins "I'm submitting this grievance against one supervisor Denny of the 2 to 9 shift C.I. Laundry" shows that it was referred to a "Greg H." No fair reading of the grievance reflects any attempt to grieve any actions but those of Dipaola.

7

that DiPaola took some wrongful action; to impose liability or on either Heidler or Plummer as DiPaola's supervisors there must be contemporaneous knowledge of DiPaola's offending act (or knowledge of a prior pattern of similar incidents), plus some action by the supervisor which communicated permission or approval to the subordinate to take that action. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir.1988), cert. denied, 489 U.S. 1065 (1989). Calloway alleges that on April 20, 2007, DiPaola retaliated against him by "caus[ing] two Correctional Officers to escort plaintiff out of the laundry." Amended Complaint, ¶ 28. Both plaintiff and defendants' evidence is that the "Information Report" accusing Calloway of misconduct on April 20, 2007, was filed not by DiPaola, but by Thomas Nepa, who was a CI laundry foreman and who is now retired. Exhibit 8 (Information Report dated 4/20/07); Exhibit 9 (Support Team Recommendations dated 4/30/07); Exhibit 3. Calloway alleges that all three named defendants "engaged in a conspiracy to retaliate against plaintiff, after plaintiff's grievance (grievance #178772) was upheld, including a administrative order to reinstate plaintiff at this former position." Amended Complaint, ¶ 37. Presumably this conspiracy was with Nepa. Plummer (but not DiPaola or Heidler) was on the team which reviewed Nepa's report and removed Calloway from his job on Aril 30, 2007. Plummer's presence at the scene of a decision, however, does not establish a conspiracy, and certainly

not a conspiracy with persons not at the scene. A conclusory allegation of conspiracy is inadequate at the complaint stage and certainly cannot survive summary judgment without some admissible evidence that the named defendants actually came to some agreement to retaliate. Calloway offers none. Additionally, defendants argue, the alleged retaliation came four days before the event which allegedly triggered it, Deputy Superintendent Sylvia Gibson's recommendation on April 24, 2007, effectively vindicating Calloway's February grievance, that Calloway should be moved to the first shift and be given a quality control position. Exhibit 4. Calloway argues that the relevant decision to remove him from his job actually came on April 30, 2007 and so could have been retaliatory. That a fact could have been is not equivalent to a genuine dispute about the existence of that fact.

Calloway also claims that the defendants retaliated against him for filing grievances by having the CI laundry lose or deface (for instance by marking it "snitch") some of his laundry on June 11, 2007, August 1, 2007, December 9, 2007, and July 24, 2008. Amended Complaint, ¶¶ 36, 44. Calloway filed five grievances with respect to this issue: No. 190348, No. 196039, No. 211340, No. 237319, and No. 238985. See Exhibit 7. Defendants contend without contradiction that No. 190348, No. 196039, and No. 211340 were never appealed to final review and were not exhausted. As for Grievance No. 237319, Exhibit 10, and Grievance No. 238985,

Exhibit 11, Calloway appealed them to the final level of review. Assuming that Calloway has properly exhausted these two grievances and that they put defendants on notice of some wrongful conduct, Calloway has failed to develop any evidence that any defendant was responsible for the loss of his items, or that there was a retaliatory motive behind the loss. Calloway argues that the repetitive nature of the problem shows that all the defendants condoned and in effect caused his losses. To the contrary, the administrative record of No. 237319, which concerns the loss of clothing in July, 2008, shows that at least Deputy Superintendent Gibson believed that special procedures had been set up in order to assure that Calloway's laundry would not be lost or tampered with. Further, despite the lack of evidence that anyone at CI was responsible, the Department of Corrections apparently replaced those items Calloway could prove he owned. Exhibit 10.

Grievance No. 238985 dates from August 2008 (the original contains a date in 2007) and accuses Heidler, who "being the CI-Laundry Manager of the entire laundry is doing nothing to try and prevent [the loss of Calloway's clothing] from happening." Exhibit 11. Insufficient effort to prevent or to cure a problem is not the same as intending or causing a problem. As the Court of Appeals for the Third Circuit has observed in the much more serious context of an inmate who allegedly was held past the expiration of his sentence, "not every official who is aware of a problem exhibits

indifference by failing to resolve it." Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir.1989). See also Johnson v. Attorney General, 187 Fed.Appx. 154, 157 (3d Cir.2006)(inmate whose appeal was dismissed because prison personnel failed to mail it on time had no federal claim because he failed to show defendants "intentionally or deliberately prevented his mail from being accurately dated.") Calloway comes forward with nothing more in his motion that the allegation of lost clothing. No jury would ever be allowed to find defendants liable on this record.

In short, there remains one issue for trial: whether DiPaola's issuance of a misconduct was in retaliation for Calloway's filing of Grievance No. 178772. Summary judgment should be entered for defendants on the balance of the Amended Complaint, and defendants Heidler and Plummer completely dismissed from this action.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: February 25, 2011

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Edmound Calloway CZ-1154
S.C.I. Somerset
1600 Walters Mill Road
Somerset, PA 15510

11